IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANGELA GONZALEZ,

    Plaintiff,

v.                                         Civil Action No. 3:23cv831

EQUIFAX INFORMATION SERVICES,
LLC, et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on [AMENDED] DEFENDANT TRANS UNION LLC'S EXPEDITED MOTION FOR PROTECTIVE ORDER REGARDING DECLARANTS' DEPOSITIONS (ECF No. 138) (the "MOTION"), the supporting, opposing and reply memoranda (ECF Nos. 139, 164, and 166). For the reasons set forth below, the [AMENDED] DEFENDANT TRANS UNION LLC'S EXPEDITED MOTION FOR PROTECTIVE ORDER REGARDING DECLARANTS' DEPOSITIONS (ECF No. 138) will be denied.

## BACKGROUND

Angela Gonzalez filed this action against Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC ("Trans Union") and Mariner Finance, LLC ("Mariner"). Gonzalez has settled the claims against Equifax and Experian.

In COUNT I, Gonzalez alleges that Trans Union violated 15 U.S.C. § 1681e(b) by "failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files they published and maintained concerning Plaintiff when they reported the inaccurate account information from Mariner and Synchrony." In COUNT II, Gonzalez alleges that Trans Union violated 15 U.S.C. § 1681i(a)(1) by "failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from each of Plaintiff's credit files." In COUNT III, Gonzalez alleges that Mariner violated 15 U.S.C. §§ 1681s-2(b)(1)(A) & (B) by "failing to fully conduct a reasonable investigation of Plaintiff's disputes after her disputes were furnished directly to it by Equifax, Experian, and Trans Union." In COUNT IV, Gonzalez alleges that Mariner violated 15 U.S.C. § 1681s-2(b)(1)(C)(D) and (E) by "publishing the inaccuracies within Plaintiff's credit files with Equifax, Experian, and Trans Union without also including a notation that these debts were disputed and by failing to correctly report results of an accurate investigation to Equifax, Experian, and Trans Union." Finally, in COUNT V, Gonzalex alleges that Mariner violated 15 U.S.C. § 1681b(f) by "unlawfully obtaining Plaintiff's consumer reports

without Plaintiff's written authorization or a permissible purpose." (Complaint, ECF No. 1 (passim, at pp. 26-33)).

The fundamental facts alleged to be the bases for Gonzalez's claims against Trans Union and Mariner are relatively simple. To begin, the Complaint alleges, without refutation, that Gonzalez was the victim of identity theft committed by an unknown individual who opened a variety of consumer accounts in Gonzalez name using Gonzalez' personal identifiers. When, in May 2022, Gonzalez applied for a mortgage, she discovered several fraudulent accounts with Comenity Bank were being reported on her credit record. She was, however, able to have the fraudulent Comenity Bank information removed. Then, in May 2023, Gonzalez discovered a fraudulent Mariner account with an allegedly charged-off balance of $3,479.00 and a fraudulent Synchrony Bank financial account with a balance of approximately $850.00 being reported on her credit files. The Complaint alleges that Gonzalez did not open the Mariner or Synchrony accounts and that she did not authorize anyone to open the Mariner and Synchrony accounts on her behalf.

Shortly after discovering the bogus accounts, Gonzalez filed disputes with Trans Union and Mariner. (ECF No. 1, ¶¶ 38-43). The Complaint goes on to recite the lack of response and the lack of appropriate action attributable to Trans Union and Mariner that led to the claims that are asserted in COUNTS I-V as to those

3

defendants. (Complaint, ECF No. 1, ¶¶ 39-82). It is also alleged that Mariner illegally accessed Gonzalez's consumer reports. (Complaint, ECF No. 1, ¶¶ 83-91).

As a result of the alleged violations of law, Gonzalez claims to have sustained actual damages including the cost of attempting to fix her credit, the loss of time in attempting to correct the inaccuracies, the stress involved with attempting to secure proper action on the parts of Trans Union and Mariner, as well as mental anguish, anxiety, depression, and medical symptoms such as high blood pressure and pain and symptoms of heart disease, loss of sleep, weight gain, and harm to her reputation and loss of privacy. (Complaint, ECF No. 1, ¶ 94). The Complaint then recites extensively why the violations at issue were willful. (COMPLAINT, ECF No. 1, ¶¶ 95-128). If the assertions in that part of the Complaint alleging willfulness are proven at trial, the defendants face a substantial likelihood of being assessed significant punitive damages.

To recover under COUNTS I-V against Trans Union and Mariner, Gonzalez must prove, <u>inter alia</u>, that she was not the "applicant, user, or authorizer" of the Mariner account which is alleged to have been fraudulently established. And, in the Complaint, Gonzalez alleges that "she did not open the Mariner and Synchrony

4

accounts, nor did she authorize anyone to open the Mariner and Synchrony accounts on her behalf." (Complaint, ECF No. 1, ¶ 42).

Gonzalez also filed a motion for partial summary judgment on the issue of the accuracy of the reporting by both Mariner and Trans Union.[1] When responding to that motion, neither Trans Union nor Mariner produced or identified any document that supported in any way the notion that Gonzalez had opened, used, or authorized the use of, the Mariner account. Moreover, both Trans Union and Mariner admitted in their responses that Gonzalez did not open the Mariner account and that the reporting to the contrary was simply not accurate.

On that record, the Court found that "the record discloses no evidence to refute Gonzalez's sworn statement establishing that the reporting of the Mariner account was not accurate." (ECF No. 149). Accordingly, the Court held that:

> In sum, both Trans Union and Mariner conceded that the reports respecting Gonzalez (which are at the center of this law suit) are inaccurate. Accordingly, partial summary judgment on that element of her claim is appropriate and will be granted.

Id.

In order to prove the other elements of her claims, Gonzalez initiated discovery against both Trans Union and Mariner. The

---

[1] See PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF No. 47.

parties are at issue respecting the reasonableness and proportionality of the discovery and the extent to which the defendants have provided discovery. Because of that circumstance, Gonzalez filed PLAINTIFF'S MOTION TO COMPEL AND FOR RULE 37(c)(1) SANCTIONS AGAINST DEFENDANT TRANS UNION, LLC (ECF No. 113) and PLAINTIFF'S MOTION TO COMPEL AND FOR RULE 37(c)(1) SANCTIONS AGAINST DEFENDANT MARINER FINANCE, LLC (ECF No. 116). In support of its opposition, Mariner submitted the declaration of Jamie Myers. In support of its opposition to the Motion to Compel, Trans Union filed the declarations of Kimberly A. Bye and Justin Walton. In response, Gonzalez filed PLAINTIFF'S OBJECTION TO AND MOTION TO EXCLUDE DECLARATION OF JAMIE MYERS (ECF No. 152), PLAINTIFF'S OBJECTION TO AND MOTION TO EXCLUDE DECLARATION OF KIMBERLY A. BYE (ECF No. 154) and the PLAINTIFF'S OBJECTION TO AND MOTION TO EXCLUDE DECLARATION OF JAMIE MYERS (ECF No. 152) and PLAINTIFF'S OBJECTION TO AND MOTION TO EXCLUDE DECLARATION OF JUSTIN WALTON (ECF No. 156) and supported each motion with briefs (ECF Nos. 153, 155, and 157, respectively). Briefing respecting those papers is not concluded and Trans Union and Mariner have been granted an extension of time in which to respond to Gonzalez's objections to the use of those declarations and Gonzalez has received an extension of the date for which to file her replies. (ORDER, ECF No. 169).

Additionally, Gonzalez informed the defendants of the need to depose the Trans Union witnesses, Bye and Walton, which were offered assertedly to explain the burden that complying with the discovery request Gonzalez had made would impose upon Trans Union. Gonzalez sought those depositions on an expedited basis so that she could timely file a reply to the Trans Union response that raised the question of burden based on the declarations of Bye and Walton. Notwithstanding that Trans Union had not demonstrated the burden now claimed in any of the sessions discussing and negotiating the scope of Gonzalez's discovery requests, it refused to produce Bye and Walton for deposition. Instead, Trans Union filed the [AMENDED] DEFENDANT TRANS UNION LLC'S EXPEDITED MOTION FOR PROTECTIVE ORDER REGARDING DECLARANTS' DEPOSITIONS (ECF No. 138) which is presently before the Court.

## CONCLUSION

Having reviewed the entire file, including Gonzalez's motions to compel and seeking sanctions under Fed. R. Civ. P. 37(c) against both Trans Union and Mariner, the responses, and the replies thereto, and considering the declarations that were submitted and the rather remarkable statements made therein respecting the cost to Trans Union of complying with discovery requests, the Court finds that there is a substantial question respecting whether Bye or Walton have the requisite qualifications and personal knowledge

to make the assertions set forth in their declarations. Accordingly, the Court finds that it is necessary that Gonzalez be allowed to take their depositions.

Trans Union also requests that the depositions be limited to two hours each. That is unreasonable given the scope of the declarations and the need to probe the verity of the assertions therein

Finally, Trans Union asks that the parties be allowed to supplement the Motion to Compel record with the transcripts. The use of the depositions in responding to the MOTION was the very purpose of which Gonzalez sought to take them. So the Plaintiff can use them. It is premature to determine whether or how Trans Union can use them.

In sum, the record establishes the reasonableness and the necessity of requiring Bye and Walton to be deposed as to whether they have personal knowledge of the assertions they make in their declarations and as to the bases for, and the facts relevant to, those assertions. And, the nature and substance of the assertions in the declarations establish the need for a substantial, perhaps lengthy, interrogation of each declarant. Therefor, to the extent that the MOTION seeks to prohibit, or to impose an arbitrary,

8

unwarranted time limit on, the length of the deposition, it will be denied.[2]

Given that the briefing on this issue has further delayed these proceedings, it is hereby ORDERED that, by September 9, 2024, the parties shall submit a schedule for the taking of the depositions which shall be held during the period September 11-18, 2024, including Saturday, September 14 and Sunday, September 15, if necessary. Without further authorization, each deposition may be taken for two (2) seven hour days so that the record respecting the Motion to Compel and Motion for Sanctions and the objections to the use of the declarations may be complete. Should additional time be required, the issue will be argued in a telephone conference.

It is so ORDERED.

                                                      /s/    REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: September 5, 2024

---

[2] The filing of the MOTION has effectively delayed the depositions so that aspect of the MOTION will be denied as moot.